## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 24 2020, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Batesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| George Stephens,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | September 24, 2020<br><br>Court of Appeals Case No.<br>20A-CR-500<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Angela Dow Davis, Judge<br><br>The Honorable Hugh Patrick Murphy, Magistrate<br><br>Trial Court Cause No.<br>49G16-1911-CM-44539 |

**Brown, Judge.**

George Stephens appeals his conviction for invasion of privacy as a class A misdemeanor. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

On May 20, 2018, Stephens signed a plea agreement under cause number 49G04-1705-F5-18129 ("Cause No. 129"). The plea agreement provided a total sentence of two years suspended to probation and served consecutive to cause number 49G04-1511-F5-41014 ("Cause No. 14"). It also provided: "Throughout Defendant's entire sentence, Defendant shall have no contact of any kind with the following person(s): Brandy Allen." State's Exhibit 2.

On May 22, 2018, a no contact order titled "No Contact Order While on Probation Under Indiana Code 35-38-2-2.3 or Serving Executed Sentence Under Indiana Code 35-38-1-30" was issued to Stephens under Cause No. 129 and named Allen as a protected person.[1] State's Exhibit 1 (some capitalization omitted). The no contact order was served on Stephens in open court on May 22, 2018. The no contact order provides that "[t]his order remains in effect during the Defendant's executed sentence and until probation has been terminated." State's Exhibit 1. It also contains a "Statement of Defendant" asserting Stephens read the order and understood that violation of Ind. Code §

---

[1] Ind. Code § 35-38-2-2.3(a) provides that, "[a]s a condition of probation, the court may require a person to do a combination of the following . . . (18) Refrain from any direct or indirect contact with an individual . . . ." Ind. Code § 35-38-1-30 provides: "A sentencing court may require that, as a condition of a person's executed sentence, the person shall refrain from any direct or indirect contact with an individual."

35-38-2-2.3 is punishable by a revocation of probation and may cause additional charges to be filed against him. *Id.* The no contact order contains a signature above the heading "Signature of Defendant." *Id.*

[4] Around 10:00 p.m. on November 20, 2019, Allen heard a banging on the door of her residence in the 5700 block of Port Au Prince, called the police and said someone was trying to break her windows. Allen gave the police a description of a car and described a person entering a white Cavalier. On that day, Stevens, whom Allen had known for eight or nine years and was the father of her three children, lived with her "but he wasn't there like every, it wasn't an every-day thing; it was just sometimes." Transcript Volume II at 83.

[5] Indianapolis Metropolitan Police Officer Dustin Bland responded to a dispatch of a burglary in progress. Indianapolis Metropolitan Police Officer Lyvia Deaver arrived at the scene soon after Officer Bland. As they were walking to Allen's apartment, dispatch relayed information that the suspect had left in a white vehicle. Officer Bland continued to the front door of the apartment, and Officer Deaver went to look for the vehicle. Officer Deaver found Stephens, who matched the description of the burglary suspect in a white Chevy Cavalier, parked next to the apartment building to which they had been dispatched. Officer Bland spoke with Stephens who "seemed very angry." *Id.* at 93. Stephens said he had been living there for ninety days but did not have a key to the residence. Officer Bland ran Stephens's name through the BMV and arrested him for invasion of privacy.

[6] On November 21, 2019, the State charged Stephens with invasion of privacy as a class A misdemeanor. On January 22, 2020, the court held a jury trial. At the beginning of the trial, the court read the following stipulation of the parties: "1. A No-Contact Order was issued to [] Stephens on May 22, 2018 under [Cause No. 129]. Number 2. Said No-Contact Order names Brandy Allen as a protected person and 3. Said No-Contact order was served on [] Stephens in open Court on May 22, 2018." *Id.* at 65. The State presented the testimony of Allen, Officer Bland, and Officer Deaver. It also introduced, and the court admitted, the no contact order and plea agreement in Cause No. 129. During direct examination, Officer Bland stated Stephens and Allen "were run through BMV from who they were and a valid Protective Order . . . ." *Id.* at 93. Stephens's counsel objected "to anything that is hearsay." *Id.* The prosecutor asked if he made a decision on the information he found through running their names, and Officer Bland answered affirmatively and indicated Stephens was arrested for invasion of privacy.

[7] After the State rested, Stephens's counsel moved for judgment on the evidence pursuant to Ind. Trial Rule 50(A) and asserted there was not sufficient evidence to prove that Stephens was on probation at the time of the alleged incident. The prosecutor stated that the plea agreement clearly stated he was on probation for two years beginning in May 2018. After some discussion, the court denied the motion.

[8] Charleston Lee Bowles, a parole agent with the District of Parole through the Indiana Department of Correction, testified that he supervised Stephens as a

parolee, Stephens started parole on August 13, 2019, and he conducted an initial interview on August 19, 2019. When asked if he supervised Stephens "up until sometime in November," he answered: "Correct, but he was violated on – ." *Id.* at 108. Defense counsel stated, "I am just asking you if you supervised him until he was arrested on this case," and Bowles replied, "[t]hat is correct." *Id.* at 109. He stated that he conducted a home visit with Stephens on September 26, 2019, when Stephens was living with his girlfriend in the 5700 block of Port Au Prince Drive. He testified Stephens gave Allen's name as a contact and Stephens told him that he was not on probation. On cross-examination, when asked if Stephens was on parole for Cause No. 129, he answered: "He was not. That was his; that was the cause number that he had a detainer for prior to being released and being on parole." *Id.* at 110. He also indicated he had not reviewed any plea agreement related to Cause No. 129 and that he was not in any way affiliated with the Marion County Probation Department. He testified that he "had no idea [Stephens] was on probation" and never discussed the no contact order with him. *Id.* at 111. On redirect, he indicated Stephens was on parole in Cause No. 14.

[9]     Stephens testified that he understood the no contact order would begin in December 2020 after he served his parole. He testified he knocked on the door of Allen's apartment on November 19, 2019, pulled his car around, and was texting Allen when the police arrived. When asked if he was unaware of the no contact order being in effect at that time, he answered: "I would not have even been over there if I was aware of it." *Id.* at 116. He testified that he informed

Bowles about living with Allen and that Bowles did not say that he could not live with her. The jury found Stephens guilty. The court sentenced Stephens to 365 days and suspended the sentence to probation.

## *Discussion*

[10] The issue is whether the evidence is sufficient to sustain Stephens's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[11] Ind. Code § 35-46-1-15.1 provides that "[a] person who knowingly or intentionally violates . . . a no contact order issued as a condition of probation . . . commits invasion of privacy, a Class A misdemeanor." "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[12] Stephens argues that he believed the no contact order would not be in effect until after he completed his parole sentence on December 13, 2020. In other words, he asserts that "[t]he no-contact order was a condition of his probation,

which had not yet begun during his arrest for invasion of privacy." Appellant's Brief at 11.

[13] Stephens stipulated that a no contact order was issued to him on May 22, 2018, under Cause No. 129, the order listed Allen as a protected person, and it was served on him in open court on May 22, 2018. The no contact order states that Stephens "*is ordered* to have no contact with: Brandy Allen" and "[t]his order remains in effect during the Defendant's executed sentence and until probation has been terminated." State's Exhibit 1 (emphasis added). Stephens signed the May 20, 2018 plea agreement under Cause No. 129, which provided for a total sentence of two years suspended to probation and that he shall have no contact with Allen "[t]hrougout [the] entire sentence." State's Exhibit 2. Less than two years later, Stephens knocked on Allen's door and texted her.

[14] We conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found that Stephens knowingly violated the no contact order, and his arguments amount to an invitation to reweigh the evidence.

[15] For the foregoing reasons, we affirm Stephens's conviction.

[16] Affirmed.

Robb, J., and Crone, J., concur.